HOUSTON C. PRICE, RESPONDENT, v. THE STATE SOCIAL SECURITY COMMISSION OF MISSOURI, APPELLANT.—121 S. W. (2d) 298.

Springfield Court of Appeals. October 24, 1938.

Rehearing denied November 16, 1938.

*Justin Ruark* for respondent.

*Roy McKittrick*, Attorney-General, *Aubrey R. Hammett, Jr.*, and *Harry H. Kay*, Assistant Attorneys-General, for appellant.

SMITH, J.—This is an appeal from the judgment of the circuit court wherein that court construed our statutes with references to The State Social Security Commission of Missouri, and found that Houston C. Price was entitled to payment of benefits under the laws of this State.

On November 5, 1937, Houston C. Price filed with the State Social Security Commission the following request for a hearing before that commission, caption omitted:

"Comes now your petitioner and shows that prior hereto he filed with the Commission his application for Old Age Assistance in the manner and form provided by law; and after due consideration of said application the same was denied and your applicant was notified of said decision. That the grounds for rejection of said application were as follows:

" 'No need .established and your allowance more than makes you ineligible for Old Age Assistance.'

"Your applicant further states that he is over the age of Seventy Years; That he is incapacitated from earning a livelihood and has not sufficient income or other resources to provide a reasonable subsistence compatible with decency and health, and is therefore without adequate means of support; That he has resided in the State of Missouri for five years and more immediately preceding his application for assistance; and that he is now a resident of Newton County, Missouri.

"Wherefore your applicant prays for an appeal to the State Commission from the decision of the County Commission.

"RUARK & RUARK,
"Attorneys for Appellant."

The State Social Security Commission set the date for hearing for December 17, 1937, and notified the petitioner to appear on that date. A hearing was had, and on December 21, 1937, the Commission made the following report:

"The above claimant for benefits under the Social Security Laws having submitted his claim and had a hearing on the 17th day of December, 1937, and. after hearing the parties at issue, their repre-

sentatives, witnesses, and evidence, the State Social Security Commission finds and awards:

" 'That the claimant does not come within the purview of the statute, as he has adequate means of support to provide a reasonable subsistence compatible with decency and health. Therefore, claimant's application for old age assistance is denied.'

"Given at the City of Jefferson, State of Missouri, this 21st day of December, 1937."

The petitioner gave proper notice of appeal, and an appeal was taken to the Circuit Court of Newton County, where a hearing was had and on March 11, 1938, the circuit court found in favor of the petitioner, and we quote in full the court's judgment and decree, to-wit:

"This is an appeal taken from the decision of the State Social Security Commission, in denying appellant, Houston C. Price, old age assistance under the Laws of 1937. The appellant was denied benefits for the following reasons, to-wit: 'That the claimant does not come within the purview of the statutes, as he has adequate means of support to provide a reasonable subsistence, compatible with decency and health.'

"The only question involved in this appeal is whether or not the applicant qualifies under the Act, or is disqualified because of having sufficient INCOME OR OTHER RESOURCES to provide him a reasonable subsistence.

"There is no controversy about the applicant's qualifications as to age, property, or residence. The evidence disclosed that the applicant had no property, insurance, stocks, annuities, or other assets from which he derives an income. He receives no salary, and the record discloses that he is physically unable to earn one. The only testimony in the record in this case upon which the respondent claims that the appellant is disqualified to receive the old age assistance is the fact that the WIFE of the applicant has been receiving the sum of fifty dollars per month from a son-in-law. There is no testimony in the record to show that this is other than a gift. No contract exists for the payment of the money; no expectation or right of expectation exists as to its continuance. No legal or moral right requires its continuance, and no understanding exists that it shall be so continued. It depends entirely upon the charitableness of the man who makes the donation.

"Apparently, the respondents contend that this gift to the WIFE of the applicant is INCOME, within the meaning of this ACT.

"In order to arrive at a fair decision in this case, it is necessary that the law be construed by gathering the legislative intent or purpose of the Act. A cardinal rule of construction is always that the provisions of the Statute must be considered, and its proper con-

struction gathered from the whole. Additional intention or intentions cannot be surmised, unless the Act is ambiguous.

"The Court cannot agree to the relator's theory that the provision of this Act for old age assistance is relief, for the reason that under Section 20, Page 476 of said Act, the funds in the hands of the State Treasurer are grouped as follows: 'First: Old Age Assistance Fund; Second: Aid to Dependent Children Fund; Third: Relief fund..........'

"This Pension Act is a remedial statute, not a penal statute. It is therefore entitled to liberal construction in favor of its beneficiaries, in order to accomplish the object in mind. The Act under this cause of action before this Court, under Section 12, Page 474, provides, 'Pension, or old age assistance, shall be granted to any person who:

" '(1st) is seventy years of age or over;

" '(2nd) is incapacitated from earning a livelihood and has not sufficient income or other resources to provide a reasonable subsistence, compatible with decency and health, and is therefore without adequate means of support;

" '(3rd) has resided in the State five years or more within the nine years immediately preceding application for assistance, and one year preceding the date for application for assistance.'

"Article 4, Section 47, of the Missouri Constitution, was amended on November 8, 1932, when the qualified voters of the State passed the following amendment; 'That Act 4, Section 47, of the Missouri Constitution, will be, and the same is hereby amended, by adding at the end of the said section, the following words: "provided further that nothing in this constitution contained shall be construed as prohibiting the General Assembly from granting or authorizing the granting of pensions to persons over seventy years of age, who are incapacitated from earning a livelihood, and without means of support, as may be provided or regulated by law." '

"The above mentioned Section 12 was enacted in view of this amendment, and since, Section 11 of said Act provides, 'the amount of benefits which any person shall receive or shall be expended for any purposes herein shall be determined, certain due regard to resources and necessary expenditures of the individual......'

"Therefore, in view of all these provisions, it is necessary for the Court to determine the words MEANS OF SUPPORT, RESOURCES, and INCOME, to finally determine the eligibility of the applicant.

"INCOME is generally referred to by law writers as the fruit of the tree of property, and proceeds from fixed right.

"In 'Words & Phrases, 1st Series, Vol. 5,' the words MEANS OF SUPPORT, are defined as follows: In its general sense it embraces all those resources from which the necessaries and comforts of life

are or may be supplied, such as rents, foods, salaries, wages or other sources of income. Webster's International defines it as 'That gain which proceeds from labor, business, property, or capital of any kind, as the produce of a farm, the rent of a farm, the proceeds of professional business, the proceeds of commerce or of occupation, or the interest from money or stocks and bonds, especially the annual receipts of a private person or a corporation from property.' In 'Words & Phrases, 3rd Series, Vol. 7,' SUPPORT is defined as follows: 'Support means a livelihood.' Webster's International defines the word SUPPORT, to furnish with funds or means for maintenance; to supply with lodging, food, clothing, etc.' I find the further definition of SUPPORT in 'Words & Phrases' to be: 'When the household has been supplied with food, raiment, medical assistance and medicine, the requirements prescribed by the statutes has been reached.'

"RESOURCES is defined as follows: 'Money or other property that can be converted into supplies, capable of producing wealth or to supply necessary wants.'

"It is the opinion of this Court under the above state of facts and the law, that the Legislature did not intend to change the words INCOME, SUPPORT and MEANS OF SUPPORT, to ASSISTANCE, HELP or CHARITY. The fact that someone has been charitable enough to provide the means to prevent this applicant from being made an inmate of a public institution, does not change the intent of the Legislature in this Act, or prevent him from being entitled to the benefits of this Act. It is the opinion of this Court that under the provisions of this Act, that the children or any other relative is not required to provide means of support, or that if they do so, by reason of their relationship, it does not prevent those who are qualified, from being entitled to the benefits.

"It is therefore ordered, adjudged and decreed, that the applicant and appellant, Houston C. Price, is entitled to the benefits of a pension, or Old Age Assistance, as provided under Section 12 of this Act.
"Respectfully submitted,
"EMORY E. SMITH,
"Judge, 24th Judicial District of Missouri."

Exceptions to the entry of this judgment were properly saved, a motion for new trial was filed, and in due time by the trial court overruled, and thereafter an appeal was had to this court.

The case is presented to us under a single assignment of error as follows: "The court erred in finding for the claimant when under the evidence and the law, the finding should have been for the State Commission."

We are not unmindful of the fact that in construing this law, we are exploring somewhat a new field so far as an appellate court of

this State has gone, and in considering the case, we must of necessity consider the evidence before us.

The Attorney-General has presented the evidence, and his conclusions as to what the evidence was. We quote in full the showing from the abstract as to the evidence as follows:

"Said Bill of Exceptions disclosed testimony as follows:

"Claimant, Houston C. Price testified as follows:

"That he resided in Neosho, Newton County, Missouri; that he was seventy-two years old; that he had lived in this state since September 27, 1865, with the exception of a few years when he was in the Indian Territory, but at that time he counted Missouri his home; that he had lived in Missouri for the last ten years.

"In response to a question as to what his physical condition was and had been for the last five years, the witness answered:

" 'Well, completely broken down. There is a nervous trouble. My general health at the present time is fairly good, but my nerves are still gone.' In answer to a question as to whether he had had a stroke, witness said that he fell over in front of the drug store about five years ago; that since the time of said fall he had not been able to perform any work or labor for a livelihood and that he had not earned any salary or remuneration; that he did not own any property, stocks, bonds, real estate or insurance; that he did not then have any income of any kind; that his wife had been receiving some money as a gift from a son-in-law in the amount of fifty dollars a month; that this gift was not sent under any agreement or contract of any kind and that he did not know whether his wife would receive anything from the son-in-law next month or any succeeding month; on cross-examination the witness testified that he and his wife had an apartment in the Colonial Hotel in Neosho; that said apartment consisted of two furnished rooms with lights and water and heat furnished; that the rent paid on said apartment was twenty dollars a month, which paid for the rooms, light, heat and water. In response to questions concerning said apartment the witness testified as follows:

" 'Q. Now, are those quarters comfortable and convenient? A. Well, as good as we can get for that money, I guess.

" 'Q. Here in town? A. It is not what we are used to, but we had to take it.

" 'Q. They are comfortable quarters, are they not? A. Well, fairly. Yes.'

"The witness further testified that his wife did the cooking in the apartment and that she had an income from sewing of perhaps five dollars a month; that the fifty dollars received from the son-in-law plus the five dollars earned by his wife, they had fifty-five dollars a month to go on; that this fifty-five dollars was used for the support of himself and his wife; that with said amount of fifty-five dollars they were paying their rent, groceries and other living expenses; that

he and his wife lived within that income of fifty-five dollars a month, but that it was not what they were used to; that they had been receiving the fifty dollars a month from a daughter and son-in-law for about five years and that during that time said amount had been received by them regularly; and that applicant now had the same means of support that he had had for the last five years.

"Witness William Williams was called to the stand by plaintiff and testified that he was director of the Social Security Commission in Newton County.

"Witness produced a roll of pensioners of Newton County, which was examined by the attorney for the claimant; witness testified that the name of Houston C. Price was not on said list of those receiving old age assistance in Newton County.

"The Commission produced Gertrude Hemphill as a witness who testified as follows:

"That she was Senior Visitor under the Social Security Commission; that her duties were to investigate the living conditions of applicants of old age assistance; and that she had investigated the living conditions of Houston C. Price. She testified as to those conditions in the following language.

" 'When I made the investigation they were living in a two-room apartment in the Colonial Hotel. There are two rooms—a kitchen, and they also eat in that room, and a large living room and combined bedroom. Their home is nicely furnished, the furniture belonging to the people from who they rent the apartment. It is adequate in all ways. It was electricity, and heated with gas. The furnishings are as nice as in the average apartment.'

"On cross-examination witness testified that claimant, Houston C. Price, had a 1929 Dodge automobile, upon which she did not place a value, but stated that she had driven worse cars than that, and in response to further cross-examination witness testified that she had not told Mr. Price what he should do or would have to do to qualify under the provisions of this Act. Under redirect examination witness testified that Mr. Price had some furniture stored in the home of his son-in-law, Mr. Ruark, his attorney in this case, but that she did not know what the value of it was."

This evidence, with the conclusions expressed therein, is all that is before us for us to determine the facts in this case. The Commission in its statement concedes that: "The evidence discloses Houston C. Price is seventy-two years of age, that he has been a resident of this State for the last ten years, that his general health is fairly good at the present time, but he is unable to do any kind of work. To the above facts there is no contest."

As we read the testimony as shown by the abstract, we think there can be no question as to the facts in this case. As we see it there is no controversy as to the facts. The uncontroverted facts show that

Houston C. Price is more than seventy years of age; that he is incapacitated from earning a livelihood; that he has resided within this State for many more than five years next preceding application for assistance; that his wife earns five dollars per month from her work, and that this is the only income earned by her, that the petitioner does not earn anything. The foregoing are the facts that must be shown according to Section 12 of the Laws of Missouri 1937, beginning at page 467 to be entitled to pensions or old age assistance.

Under Section 11 of the same Act of 1937 on page 473 there are provisions as to when a person shall not receive benefits. This section provides as follows: "Benefits shall not be payable to any person who:

"(1) Has made an assignment or transfer of property for the purpose of rendering himself eligible for benefits;

"(2) Owns or possesses cash or negotiable security in the sum of $500.00 or more;

"(3) owns or possesses property of any kind or character in excess of $1500.00; or who has an interest in property the value of which exceeds said amount.

"(4) is married and actually living with husband or wife, if the value of his or her property, or the value of his or her interest in property together with that of such husband or wife exceeds $2,000.00;

"(5) is an inmate of any public institution at the time of receiving benefits. An inmate of such an institution may, however make application for such benefits, which if granted, shall not begin until after he or she ceases to be an inmate."

The record before us fails to show that the claimant comes within either or any of the provisions that would disqualify him for assistance. It is not contended that the claimant is so disqualified.

The facts in this case show that a son-in-law of the wife of the claimant has for five years prior to the hearing in the circuit court given to the wife of the claimant fifty dollars per month, and this gift to the wife together with the five dollars per month earned by her is all spent by her for the support of herself and her husband, the claimant. This record does not show whether or not the donor of the fifty dollars per month was the husband of claimant's daughter, or whether his wife was a daughter of a former marriage of her mother. As we view it, the only question for determination is whether the gift to the wife, which is accepted by her and used to keep her husband alive would disqualify him from receiving assistance under the laws of Missouri.

We quote Section 12 of the 1937 Laws of Missouri, on page 474, as follows:

"SECTION 12. PENSIONS OR OLD AGE ASSISTANCE SHALL BE GRANTED, WHEN.—Pensions or Old Age Assistance shall be granted under this Act to any person who:

"(1) Is seventy years of age or over;

"(2) Is incapacitated from earning a livelihood and has not sufficient income or other resources to provide a reasonable subsistence compatible with decency and health, and is therefore without adequate means of support;

"(3) Has resided in the State for five years or more within the nine years immediately preceding application for assistance and for the one year next preceding the date of application for assistance."

There is no controversy here over subsections (1) and (3) of the above Section 12. It is contended by the Commission that the fifty-five dollars per month which is received by the wife and from which the claimant has been supported in the past disqualifies him under the provisions of subsection (2) of the above Section 12.

As said above, it is conceded that the petitioner *is incapacitated from earning a livelihood* so he is not disqualified under that part of subsection (2).

Can this donation to the wife be considered or classed as *"sufficient income or other resources* to provide a reasonable subsistence compatible with decency and health"* and disqualify him under that part of subsection (2)?

To construing this section, it of necessity requires the construction or meaning of the words INCOME and RESOURCES. Both sides have submitted many definitions of these words. The words have different meanings when used in various sentences in connection with different businesses, or in describing the condition of the national government or the various states making up our national government. We have found that the true and correct meaning in all instances must be determined from the particular instrument in which the words are used, and in relation to the subject discussed. The word INCOME may be given a meaning when used in connection with one subject, and have an entirely different meaning when used in connection with another subject. The same may be said with reference to the use of the word RESOURCES. With that conclusion reached, let us consider these words in the light of our statutory law with reference to pensions or old age assistance.

The very first section of the 1937 law at page 468 says, "Said Commission is created for the purpose of acting as a state agency to administer state plans and laws involving: (1) pensions or assistance to persons seventy years of age or over, who are incapacitated from earning a livelihood and are without means of support." So far as the purposes of the creation of the Commission is concerned, it is included in the foregoing statutory provision. Its purposes are to administer State plans and laws, involving pensions or assistance to the persons therein named, which are persons seventy years of age or over and who are incapacitated from earning a livelihood and who are without *means of support*. Income and resources, in rela-

tion to this Act of the Legislature, are those things that make up the *means of support.*

It seems that the above quoted language from the first section of the Act, can mean nothing more nor less than a person seventy years old or older who (1) cannot work for hire or work to raise crops or produce from which a livelihood may be obtained, or (2) who is without means of support. What does this section mean by using the words MEANS OF SUPPORT? We think the Legislature has given us some idea of the meaning of these words in the light of this Act by language used in that part of Section 11 which we have heretofore quoted. In that section the Legislature speaks of property owned or possessed, such as cash or negotiable securities, or property of any kind exceeding $1500, or joint property of husband and wife, which value exceeds $2000. A person might be over seventy years of age and still have property such as securities or real estate from which he would receive MEANS OF SUPPORT. If he had such means of support, of course he would not be entitled to assistance from the State. We think this Act could not under any circumstances be construed to mean that gifts or donations from individuals, or from public institutions, could be in any way construed as MEANS OF SUPPORT. The act itself gives us some light on its meaning. The last part of Section 11, quoted above, provides that an inmate of a public institution may make application for benefits. The statute expressly provides that although a person has been receiving help from an institution, this does not disqualify him from applying for and receiving assistance. Under what reasoning could it be said that because an individual has been helping a person in distress, that this disqualifies him, when on the other hand, a public institution could help him and that not disqualify him?

We are forced to the conclusion, under the uncontroverted facts as admittedly are in this case, that the statutes are intended to cover such a person as the evidence in this case shows the person to be.

The Commission insists that the burden of proof is upon the petitioner and there is a failure of proof of need on the part of the petitioner, and because of such, the appeal should be dismissed. The Commission in its statement admits enough to make it a question of fact for the trier of the facts. The evidence submitted to us is set out in full, and we think it enough to submit the issues of fact to the trial court. That court saw the witnesses and heard them. It is not for this court to pass on the weight of the evidence, or the credibility of the witnesses. It needs no citation of authorities to the effect that the trial court is to pass on the evidence and the weight thereof.

It follows from what we have said, that it is our conclusion that the judgment of the trial court should in all things be affirmed. It is so ordered. *Allen, P. J.,* and *Fulbright, J.,* concur.