Perry NORMAN and Anna Norman,
Plaintiffs-Respondents,

v.

STATE DEPARTMENT OF PUBLIC HEALTH AND WELFARE, Defend-ant-Appellant.

No. 7460.

Springfield Court of Appeals.

Missouri.

Oct. 17, 1955.

John M. Dalton, Atty. Gen., Harold L. Volkmer, Asst. Atty. Gen., for defendant-appellant.

Green & Green, West Plains, for plaintiffs-respondents.

STONE, Judge.

The applications of Perry Norman and Mrs. Anna Norman, his wife (hereinafter referred to as claimants), for old age assistance benefits under Chapter 208 (hereinafter referred to as benefits) filed on February 2, 1954, were denied by the Division of Welfare and, after hearing on appeal [Section 208.080], by the Director of Public Health and Welfare (hereinafter referred to as the Director) "because they (claimants) transferred 10 acres of land to their son, Elgan, on February 2, 1954, for the purpose of rendering themselves eligible for public assistance." (Except as otherwise noted, all statutory references are to RSMo 1949, V.A.M.S.) On further appeal by claimants, the Circuit Court of Oregon County set aside the Director's decision as "arbitrary and unreasonable" and remanded the case for redetermination. Section 208.100(5). The Department appeals from that judgment.

Both claimants have made previous unsuccessful efforts to obtain benefits. Mrs. Norman's first application filed on July 20, 1951, and accompanied by an "Eligibility Statement" signed by her husband which showed that claimants owned a 263 acre farm (on which they have resided at all times herein mentioned) having a then assessed value of $3,090 and a then "real value" of $6,000, was rejected because, as Mr. Norman aptly expressed it, "I was worth too much." Mr. Norman's first application filed on August 25, 1953, and accompanied by another "Eligibility Statement" showing that claimants still owned the same 263 acre farm and certain personal property, and Mrs. Norman's second application filed on September 8, 1951, were denied on January 28, 1954, because "the value of your (claimants') total property holdings amounts to more than $5,000." Five days later, i. e., on February 2, 1954, claimants conveyed to Elgan Norman, their 48 year old son, a 10 acre tract (a portion of claimants' 263 acre farm) on which there was "a rock dwelling" occupied by Elgan and his family; and, on the same day, both claimants again applied for benefits.

At all times herein material, the eligibility of a claimant for benefits was determinable under Section 208.010, as amended by House Bill 246 enacted by the 67th General Assembly, Laws of 1953, p. 644, which provided, among other things, that benefits should not be payable to any person who owned, either individually or with his or her spouse, property "the value of which, as determined by the division of welfare, exceeds five thousand dollars," or to any person who had made "a voluntary assignment, conveyance or transfer of property within five (5) years for the purpose of rendering himself or spouse eligible for benefits," that any person conveying property "without receiving fair and valuable consideration therefor * * * shall be presumed to have made such * * * conveyance * * * for the purpose of rendering himself or spouse

eligible for benefits," and that " '(f)air and valuable consideration' * * * shall not, for the purpose of this act, be construed to include past support, contributions or services rendered by a relative to a claimant."

Claimants admittedly received no consideration on February 2, 1954, for their conveyance of the 10 acre tract to Elgan on that date. Their evidence was to the effect that in 1938 Elgan told his father that "I (Elgan) wanted to buy approximately ten acres for buildings or building purposes" and that they then agreed on a sale price of $250 for the tract on which Elgan during the same year constructed a rock dwelling at his sole expense. No portion of the agreed $250 consideration for the 10 acre tract was paid in 1938 but, as Elgan testified, he "paid it in labor" in 1947 or 1948 by helping his father repair or remodel claimants' farm home. Prior to 1954, the 10 acre tract had been assessed in the father's name, although Elgan said that he had "carried insurance" on the rock dwelling built by him. The record does not indicate that the boundaries of the 10 acre tract had been staked, fenced or otherwise fixed at any time prior to claimants' conveyance of February 2, 1954. The only explanation offered for claimants' continuing failure to convey the 10 acre tract to Elgan during the period of more than fifteen years from 1938 to February 2, 1954, and for Elgan's continuing failure to seek or obtain a conveyance of the 10 acre tract during such period, was that the matter was "just neglected."

There was no suggestion in Mr. Norman's "Eligibility Statements" of July 20, 1951, and August 25, 1953, that Elgan had any interest in, or was entitled to conveyance of, any portion of claimants' 263 acre farm; but, on the contrary, both statements affirmatively showed that claimants owned the entire 263 acres. The Welfare Director of Oregon County testified that, although claimants had had several prior contacts with the welfare office, there had been no mention of Elgan's claim until, on October 8, 1953 (while claimants' applications filed on August 25 and September 8, 1953, were under investigation), Mr. Norman for the first time told the welfare office that "the rock house on the property belonged to the son Elgan"; but, even then, "there was no mention made of any acreage" and, "when asked how the property became Elgan's, he (the father) stated he had willed it to him."

■ Proper determination of claimants' sole contention in the instant case that the Director's decision was "arbitrary and unreasonable" depends upon whether or not there was substantial evidence to support it. Collins v. Division of Welfare, Mo., 270 S.W.2d 817, 819(2); Morton v. State Social Security Commission, Mo.App., 205 S.W.2d 272, 274(4); Kelley v. State Social Security Commission, 236 Mo.App. 1058, 161 S.W.2d 661, 662–663(1). In ruling that question, only the competent evidence favorable to the Director's findings and order may be considered by us [Bollinger v. State Department of Public Health & Welfare, Mo. App., 254 S.W.2d 257, 259(3); Linton v. State Department of Public Health and Welfare, Mo.App., 252 S.W.2d 841, 843(4); Hooks v. State Social Security Commission, Mo.App., 165 S.W.2d 267, 268(1)], and we may not say that the Director's decision was arbitrary and unreasonable merely because we might have reached a contrary conclusion upon the same evidence. Howlett v. Social Security Commission, 347 Mo. 784, 149 S.W.2d 806, 810(7); Brattin v. State Social Security Commission, Mo. App., 194 S.W.2d 536, 538–539(2); Hardy v. State Social Security Commission, Mo. App., 187 S.W.2d 520, 523(7). Neither the circuit court nor this court tries the case de novo or has any right to pass upon the credibility of witnesses or the weight of the evidence. Collins v. Division of Welfare, supra, 270 S.W.2d loc. cit. 820(5); Davis v. State Department of Public Health & Welfare, Mo.App., 274 S.W.2d 615, 617(4); Taylor v. State Social Security Commission, Mo.App., 181 S.W.2d 209, 210–211(1); Chapman v. State Social Security Commission, 235 Mo.App. 698, 147 S.W.2d 157, 159 (3).

■ Reading the record in the instant case in the light of the foregoing principles, and bearing in mind that there admittedly was no " 'Fair and valuable consideration,' "

*within the statutory definition of that term,* for the conveyance of the 10 acre tract to Elgan on February 2, 1954, we have no doubt but that, on the evidence before him, the Director reasonably could have found or inferred (as he did) that claimants made such conveyance to render themselves eligible for benefits. And, since it was stipulated, "for the purpose of the trial," that the value of claimants' property, including the 10 acre tract conveyed to Elgan on February 2, 1954, was $5,449.84, it follows that, on the Director's findings, claimants were not eligible for benefits. Section 208.010, as amended Laws of 1953, p. 644.

■ Furthermore, any fact-finding administrative agency, such as the Department, which passes upon the credibility of the witnesses, may decide a claim solely upon a finding of lack of credibility. Scott v. Wheelock Bros., 357 Mo. 480, 209 S.W.2d 149, 151(3); State ex rel. Rice v. Public Service Commission, 359 Mo. 109, 220 S.W.2d 61, 65(9, 10); State ex rel. Guastello v. Johnson, Mo.App., 281 S.W.2d 34, 37(4); Garner v. Research Clinic, Mo.App., 280 S.W.2d 416, 423(6, 7); Carroll Construction Co. v. Kansas City, Mo.App., 278 S.W.2d 817, 820(2); Foster v. Carter Carburetor Corp., Mo.App., 264 S.W.2d 904, 909(2); Powers v. Universal Atlas Cement Co., Mo.App., 261 S.W.2d 512, 519(10); Veal v. Leimkuehler, Mo.App., 249 S.W.2d 491, 496(9), certiorari denied 344 U.S. 913, 73 S.Ct. 336, 97 L.Ed. 704. Thus, it was within the province of the Director to find in the instant case that "the evidence submitted that claimants intended in 1938 for Elgan to have the 10 acres is not convincing," for the Director was not required to accept as true claimants' evidence concerning the alleged oral agreement between Elgan and his father in 1938. See Michler v. Krey Packing Co., 363 Mo. 707, 253 S.W.2d 136, 140. Claimants had the burden of proving their eligibility for benefits [Linton v. State Department of Public Health and Welfare, supra, 252 S.W.2d loc. cit. 843(2); Bare v. State Social Security Commission, Mo.App., 187 S.W.2d 519, 520(2); Edwards v. State Social Security Commission, Mo.App., 187 S.W.2d 354, 358(3)]; and, if the Director concluded that their evidence failed to sustain that burden, we should not, upon the transcript presented, interfere. Nichols v. State Social Security Commission, 349 Mo. 1148, 164 S.W.2d 278, 281(9).

■ The suggestion in claimants' brief that, in determining their eligibility for benefits, the 10 acre tract (valued by the Division of Welfare at $1,000) should be excluded from consideration on the theory that in 1948 Elgan "became the absolute owner * * * by adverse possession" is without merit. For, a vendee's possession of land under an executory contract to purchase is not adverse or hostile to the vendor and the statute of limitations [Section 516.-010] does not begin to run against him until the purchase price is paid. Adams v. Wright, 353 Mo. 1226, 1232, 187 S.W.2d 216, 218(1); Manning v. Kansas & T. Coal Co., 181 Mo. 359, 375–376, 81 S.W. 140, 144 (4); Hannibal & St. J. R. Co. v. Miller, 115 Mo. 158, 164, 21 S.W. 915, 916(1); Long v. Kansas City Stock-Yards Co., 107 Mo. 298, 303, 17 S.W. 656, 657; Adair v. Adair, 78 Mo. 630, 634(2); Cole v. Roe, 39 Mo. 411, 413. And, as we have noted, it is clear from the testimony of Elgan himself that, until he paid the agreed consideration for the 10 acre tract in 1947 or 1948, his possession thereof was under an executory oral agreement to purchase, so the statute of limitations could not have started to run against claimants earlier than 1947, which was less than ten years prior to institution of this proceeding.

Believing, as we do, that there was substantial evidence to support the Director's findings and order [Collins v. Division of Welfare, supra, 270 S.W.2d loc. cit. 820(6), 821(7)], the judgment of the circuit court is set aside and the cause is reversed and remanded with directions to enter judgment affirming the decision of the Director.

McDOWELL, P. J., and RUARK, J., concur.